# COPY

1  JOSEPH H. BOYLE, ESQ.
   joe.boyle@hnbllc.com
2  CHAD M. HAGAN, ESQ.
   chad.hagan@hnbllc.com
3  HAGAN NOLL & BOYLE LLC
   820 Gessner, Suite 940
4  Houston, TX 77024
   Phone: (713) 343-0478
5  Fax: (713) 758-0146

6  DAVID A. VAN RIPER, ESQ.
   dave@vanriperlaw.com
7  VAN RIPER LAW
   1254 Irvine Blvd., Suite 200
8  Tustin, CA 92780-3571
   Phone: (714) 731-1800
9  Fax (714) 731-1811

10  Attorneys for Plaintiffs

FILED 2010 JUN 21 PM 3: 53 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. SANTA ANA BY:___

11        UNITED STATES DISTRICT COURT
12        CENTRAL DISTRICT OF CALIFORNIA

                                    CV10 -4561 SJO (Ex)

13  DISH NETWORK L.L.C., a Colorado       Case No.
    Limited Liability Company, ECHOSTAR
14  TECHNOLOGIES L.L.C., a Texas          **PLAINTIFFS' COMPLAINT FOR:**
    Limited Liability Company, and
15  NAGRASTAR L.L.C., a Colorado          **1) Violation of the Digital Millennium**
    Limited Liability Company,                **Copyright Act, 17 U.S.C. §**
16                                             **1201(a)(1);**

17        Plaintiffs,                     **2) Violation of the Digital Millennium**
                                               **Copyright Act, 17 U.S.C. §**
18        v.                                   **1201(a)(2);**

19  WARREN EDWIN SCHEIBE,                 **3) Violation of the Digital Millennium**
    individually and d/b/a                     **Copyright Act, 17 U.S.C. §**
20  NFUSIONONLINE.COM and                      **1201(b)(1);**
    d/b/a NFUSION FTA,
21                                         **4) Violation of the Communications**
          Defendant.                           **Act of 1934, as amended, 47 U.S.C.**
22                                             **§ 605(a);**

23                                         **5) Violation of the Communications**
                                               **Act of 1934, as amended, 47 U.S.C.**
24                                             **§ 605(e)(4);**

25                                         **6) Violation of the Electronic**
                                               **Communications Privacy Act,**
26                                             **18 U.S.C. § 2511(1)(a);**
                                           **DEMAND FOR JURY TRIAL**
27                                             **(Fed. R. Civ. p. 38)**

28

Plaintiffs DISH Network L.L.C., EchoStar Technologies L.L.C. and NagraStar LLC (collectively "DISH Network") bring this suit against Defendant for violation of the Digital Millennium Copyright Act, the Communications Act and related statutes.

## INTRODUCTION & NATURE OF THE ACTION

1.     DISH Network provides more than 14 million customers with high quality satellite television programming.  DISH Network's customers have access to hundreds of video and audio channels, the most high definition (HD) channels, the most international channels, state-of-the-art interactive TV applications, and award-winning HD and digital video recorder technology.  DISH Network provides its service to customers who have been authorized to receive such services after payment of a subscription fee (or in the case of a pay-per-view movie or event, the purchase price) to DISH Network.

2.     Defendant Warren Edwin Scheibe, individually and d/b/a NFUSIONONLINE.COM and d/b/a NFUSION FTA is a satellite pirate who distributes devices that enable consumers to illegally intercept and decrypt DISH Network's pay-television programming without authorization and without payment of a subscription fee to DISH Network.  Warren Edwin Scheibe, individually and d/b/a NFUSIONONLINE.COM and d/b/a NFUSION FTA performs his illegal acts individually and under the assumed names of NFUSIONONLINE.COM and NFUSION FTA.

3.     Defendant's conduct violates a variety of federal statutes, including the Digital Millennium Copyright Act and the Communications Act.

4.     DISH Network brings this suit seeking civil impoundment of defendant's software tools and files and related computers and materials under the impoundment provisions of the Digital Millennium Copyright Act, for a temporary restraining order and preliminary and permanent injunction barring defendants from

trafficking in such devices, and for such other relief as Plaintiffs prove themselves entitled.

## JURISDICTION AND VENUE

5.     This court has original federal question subject matter jurisdiction under 28 U.S.C. §§ 1331 because the claims are based upon the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, the Communications Act of 1934, as amended, 47 U.S.C. § 605 *et seq.*, and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.*

6.     Personal jurisdiction and venue are proper in this court pursuant to 28 U.S.C. §§ 1391(b)(1) because Defendant resides within this judicial district, § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district, § 1391(b)(3) because Defendant may be found in this judicial district and is subject to *in personam* jurisdiction, and §1400(a) because this case is related to an Act of Congress related to copyrights and the defendant may be found in this district.

## PARTIES[1]

7.     Plaintiff DISH Network L.L.C. is a Colorado limited liability company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112, Arapahoe County.   Plaintiff DISH Network L.L.C.'s sole member is DISH DBS Corporation, a Colorado Corporation, which in turn is an indirect wholly owned subsidiary of DISH Network Corporation, a Nevada Corporation.   DISH Network Corporation is publicly owned and traded on the NASDAQ national market under the symbol "DISH."

---

[1]   DISH Network's allegations related to the wrongful conduct of Defendant are based upon the investigation DISH Network has completed to date, upon information and belief, and with the reasonable belief that further investigation and discovery in this action will lead to additional factual support.   DISH Network therefore expressly reserves its right to supplement, amend and/or otherwise modify its claims and the basis thereof, as additional investigation and discovery is conducted.

8. Plaintiff EchoStar Technologies L.L.C. is a Texas limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112, Arapahoe County. Plaintiff EchoStar Technologies L.L.C.'s sole member is EchoStar Corporation, a Nevada Corporation. EchoStar Corporation is publicly owned and traded on the NASDAQ national market under the symbol "SATS."

9. Plaintiff NagraStar LLC is a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112, Arapahoe County. NagraStar is a joint venture between EchoStar Corporation and the Kudelski Group, a group of companies headquartered in Switzerland. Plaintiff NagraStar LLC's sole members are EchoStar Corporation and Kudelski SA. EchoStar Corporation is identified in paragraph 8 above. Kudelski SA has its principal place of business at 22-24, Route de Genève, 1033 Cheseaux, Switzerland and is listed on the SIX Swiss Exchange under the symbol "KUD."

10. Upon information and belief, Defendant Warren Edwin Scheibe does business under the assumed names NFUSIONONLINE.COM and NFUSION FTA. Upon information and belief, Defendant Warren Edwin Scheibe resides and may be served at 7389 Crimson Drive, Highland, CA, 92346

11. Defendant does business as NFUSIONONLINE.COM and NFUSION FTA (including using various alternate spellings and capitalizations). NFUSIONONLINE.COM and NFUSION FTA are assumed names and sole proprietorships of Warren Edwin Scheibe. NFusion is also the brand name Defendant uses for his satellite receivers.

### FACTS

12. DISH Network provides more than 14 million customers with high quality satellite television programming. DISH Network's customers have access to hundreds of video and audio channels, the most high definition (HD) channels, the most international channels, state-of-the-art interactive TV applications, and award-

4

winning HD and digital video recorder (DVR) technology. DISH Network provides its service to customers who have been authorized to receive such services after payment of a subscription fee (or in the case of a pay-per-view movie or event, the purchase price) to DISH Network.

13. To provide customers with a variety of programming channels, DISH Network contracts for and purchases the distribution rights to copyrighted programming—such as movies, sports, news, and general entertainment programming—from network affiliates, pay and specialty broadcasters, cable networks, motion picture distributors, sports leagues, event promoters, and other content providers. DISH Network distributes popular programming obtained from programmers such as HBO, SHOWTIME, ESPN, Cinemax, and Disney.

14. Because DISH Network generates revenues through the sale of subscription packages and pay-per-view programming, and because the ability to attract and retain distribution rights for programming is dependent upon preventing unauthorized reception of DISH Network Programming, DISH Network's video channels (except for certain promotional channels) are digitally secured and encrypted.

15. DISH Network protects DISH Network Programming from unauthorized viewing by using a management and security system ("Security System"), which serves two interrelated functions: (1) subscriber-management—allowing DISH Network to "turn on" or "turn off" programming that a customer ordered, cancelled, or changed; and (2) encryption—preventing individuals or entities who have not purchased DISH Network Programming from viewing it.

16. The Security System is comprised of two parts. First, DISH Network encrypts (electronically scrambles) its satellite signals using proprietary technology provided by NagraStar. Essentially, NagraStar provides DISH Network with "smart cards" ("Access Cards") that contain a microprocessor component that functions as a security computer to a "conditional access system" known as Digital Nagra

5

Advanced Security Process ("DNASP"). These Access Cards and related encryption technology are utilized in the satellite receivers that customers either purchase or lease. Second, the DNASP uses a complex encryption system that is combined with a Digital Video Broadcasting scrambler/encoding system to effectively protect and encrypt DISH Network Programming.

17. A consumer wishing to subscribe to and receive DISH Network Programming must first have the necessary equipment which consists primarily of: a satellite dish; an integrated receiver/decoder; and a credit card-sized DISH Network Access Card that is loaded into the receiver through a slot on the face of the receiver. On some newer models, the Access Card is integrated directly into the satellite receiver itself and is not removable.

18. The satellite dish is mounted at the subscriber's home or business. After proper installation, the satellite dish will receive programming signals from one of DISH Network's satellites. The receiver processes and descrambles the incoming signal using the data and encryption technology stored in the DISH Network Access Card.

19. DISH Network provides its Access Cards to customers for use with the receivers for the purpose of enabling authorized access to DISH Network Programming. Without a subscription, DISH Network will not provide a consumer an Access Card or authorize access to encrypted DISH Network Programming. Subscribers are not authorized to modify or tamper with the Access Card, which are clearly marked as property of DISH Network and must be returned upon request.

20. The DISH Network Access Card is essential to the operation of the receiver because it contains a secure embedded microprocessor that essentially functions as a security computer, with proprietary keys and software that contain technology codes ("Nagra Software") used to communicate with the receiver and descramble DISH Network Programming. Nagra Software is licensed from plaintiff NagraStar.

21.  The Nagra Software within each DISH Network Access Card is supported by two code segments of memory: Read-Only-Memory ("ROM"); and Electronically Erasable Programmable Read-Only-Memory ("EEPROM"). Generally, the ROM code segment contains the intimate knowledge and information regarding DISH Network's Security System and how it works; whereas the EEPROM code segment contains the secret keys enabling the decryption of DISH Network Programming.

22.  The ROM code segment provides detailed instructions and commands to DISH Network Access Cards and receivers in the normal operation of plaintiffs' Security System. Access to the proprietary information stored in the ROM code is necessary to unlock the safe containing the secrets to plaintiffs' Security System.

23.  The EEPROM code segment stores data and command codes that have been written to DISH Network Access Cards which the ROM code reads from to perform its calculation and operation functions. Moreover, the EEPROM code segment contains secret keys including, but not limited to "transmission" keys and "pairing" keys (collectively known as "Security Keys"). The Security Keys are used, *inter alia*, to encrypt and decrypt the communications between the DISH Network Access Card and the receiver.

24.  DISH Network communicates with the microprocessor in each Access Card by sending and receiving satellite signals which are routinely updated. The information transmitted to and temporarily stored on the Access Card includes the most recent Security Keys and software necessary to view DISH Network Programming.

25.  DISH Network's Security System effectively controls access to the copyrighted materials that comprise DISH Network Programming. In addition, the Security System ensures that the protection afforded to such copyrighted works, such as limitations on the dissemination and use in accordance with DISH Network's contractual agreements with content providers, is preserved. This

substantial and costly security measure is necessary to prevent unauthorized access to DISH Network Programming. The theft of DISH Network's encrypted signal and accompanying programming is commonly referred to in the industry as "satellite piracy" (or "piracy"). Satellite piracy is a problem that costs DISH Network tens of millions of dollars annually in the form of lost revenue, lost subscribers, development and implementation of additional security features and electronic counter-measures (or "ECMs") aimed at disabling pirate devices, and the investigation and prosecution of the individuals responsible for the manufacturing, distribution and use of such pirate devices.

**Defendant's Devices Are Designed To Circumvent Plaintiffs' Security System.**

26. Defendant is involved in and/or is responsible for importing, distributing, trafficking-in, promoting, designing, developing, manufacturing, and servicing piracy devices called NFusion Receivers and/or components thereof (collectively "NFusion Receivers"), and other circumvention devices and/or components thereof including the NFusion 8PSK Turbo Board and NFusion pirate software. These devices and technology are (a) primarily designed or produced for the purpose of circumventing DISH Network's Security System to gain access to DISH Network Programming; (b) have only limited commercially significant purpose or use other than to circumvent DISH Network's Security System to gain access to DISH Network Programming; or (c) are marketed by Defendant and/or others acting in concert with Defendant for use in circumventing DISH Network's Security System to gain access to DISH Network Programming.

27. Defendant's NFusion Receivers and pirate software are designed to and utilize a new form of satellite piracy known as Internet Key Sharing ("IKS") (and sometimes referred to as Control Word Sharing). IKS involves connecting an NFusion Receiver to the Internet to obtain keys that are necessary to decrypt DISH Network Programming. Defendant and his pirate end-users use a satellite dish to

intercept DISH Network's encrypted satellite transmission that is intended for legitimate and authorized DISH Network subscribers.

28. Once Defendant's NFusion Receiver intercepts DISH Network's encrypted satellite transmission, it locates a special part of the satellite transmission known as the encrypted Entitlement Control Message and sends that encrypted Entitlement Control Message over the Internet to a computer server (the "NFusion IKS Server".) The NFusion IKS Server, through its connection to a legitimate subscribed or "hacked" DISH Network Access Card, decrypts the Control Word and sends it back to the end-user's NFusion Receiver. Once returned to the NFusion Receiver by the NFusion IKS Server, the decrypted Control Word acts like a key that unscrambles the otherwise-scrambled and encrypted DISH Network Programming, allowing each end-user to steal DISH Network Programming.

29. NFusion Receivers are designed for and do engage in IKS piracy and therefore pose a unique threat to DISH Network for two primary reasons. First, unlike traditional satellite receivers modified for piracy, which require hackers to generate a "fix" or "update" following an ECM, and then require hackers or end-users to manually install it onto each satellite receiver affected by an ECM, IKS-enabled satellite receivers are designed to obtain all the information that they need to descramble DISH Network Programming (including all "fixes" and "updates") directly from an IKS Server via the Internet. These satellite receivers are thereby automatically immune to ECMs and operate continuously to steal DISH Network Programming. Pirates often boast that these receivers "never go down". Second, because these satellite receivers rely on the IKS Server, they are able to descramble DISH Network Programming even after the completion of the transition to new DISH Network Access Cards. For this reason, these satellite receivers effectively circumvent the security enhancements found in newer generation DISH Network Access Cards.

30.     NFusion Receivers are specifically designed to accept and execute pirate software that enables the receivers to circumvent DISH Network's Security System.     NFusion Receivers include a variety of components, features and functionality that have no legitimate purpose or use for true FTA programming but which are useful and/or necessary to circumvent DISH Network's Security System and steal DISH Network Programming.

31.     Defendant also sells and uses devices known as "8PSK Turbo Boards" or "DN Modules."     These devices enable satellite receivers to receive satellite signals that use a special form of modulation and forward error correction that is unique to the DISH Network platform.     Modulation is a method of varying wavelengths in a satellite signal to communicate a message.     Forward error correction ("FEC)" is a method of fixing corrupted portions of a satellite signal. These 8PSK Turbo Boards contain what is known as "8PSK modulation" and "Turbo FEC."     DISH Network's High Definition ("HD") Programming is broadcasted using this unique combination of 8PSK modulation and Turbo FEC. There are no FTA channels that broadcast programming using this unique combination of modulation and FEC and therefore no legitimate FTA purpose or use for NFusion 8PSK Turbo Boards. The only use for NFusion 8PSK Turbo Boards is to enable NFusion Receivers to steal DISH Network's HD Programming.

32.     Defendant and his pirate end-users connect NFusion Receivers directly to the Internet using a built-in Ethernet port that provides access to the NFusion IKS Server for piracy purposes. Once connected to an IKS-enabled satellite receiver, the user simply downloads the Defendant's pirate software, installs the pirate software onto their NFusion Receiver, and enters the Internet address of the NFusion IKS Server. Alternatively, the consumer buys an NFusion Receiver with pirate software pre-installed. Once completed, the NFusion Receiver allows the end-user unlawful and unlimited access to DISH Network Programming without authorization from or payment to DISH Network.

33. NFusion Receivers are primarily used for DISH Network piracy. Defendant is aware that NFusion Receivers are primarily used for DISH Network piracy.

**Defendant's Pirate Software Is Designed To Circumvent DISH Network's Security System.**

34. Defendant and/or those acting on his behalf or in concert with him is involved in and/or responsible for the design, development, financing and public release of pirate software specifically designed to use with NFusion Receivers and 8PSK Turbo Boards.

35. By causing or being responsible for the creation and release of pirate software, Defendant ensures that NFusion Receivers and 8PSK Turbo Boards can be used to steal DISH Network Programming thereby ensuring the continued sales of NFusion Receivers and 8PSK Turbo Boards.

36. Defendant has participated in and/or is responsible for the design, development, financing and public release of numerous versions of pirate software. Different versions are necessary for at least two purposes: (a) new versions tailored specifically for new models of NFusion Receivers and 8PSK Turbo Boards; and (b) new versions developed to circumvent ECMs deployed by DISH Network to disable NFusion Receivers from being used for piracy.

37. Defendant's pirate software is (a) primarily designed or produced for the purpose of circumventing DISH Network's Security System to gain access to DISH Network Programming; (b) has only limited commercially significant purpose or use other than to circumvent DISH Network's Security System to gain access to DISH Network Programming; or (c) is marketed by Defendant and/or others acting in concert with Defendant for use in circumventing DISH Network's Security System to gain access to DISH Network Programming.

38.    Defendant has participated in and/or is responsible for distribution of numerous versions of pirate software.   There is no legitimate use for the pirate software distributed by Defendant.    Defendant's pirate software has no commercially significant use or purpose.   The only use for Defendant's pirate software is to circumvent DISH Network's Security System.

39.    Defendant and those acting on his behalf or in concert with him circumvent DISH Network's Security System, intercept satellite signals and copyrighted programming distributed by DISH Network, view such programming without authorization, and redistribute some of such programming to others without authorization.

**Defendant's Devices and Software Are Advertised As Circumvention Devices.**

40.    Defendant and/or others acting in concert with him promote and advertise NFusion Receivers, 8PSK Turbo Boards and pirate software for use in the piracy of DISH Network Programming.

41.    Defendant has engaged in and/or is responsible for one or more of the following methods of promoting and advertising NFusion Receivers and 8PSK Turbo Boards for use in piracy: (a) using the logos of channels that are not available as free-to-air channels and instead require a subscription; (b) giving out so-called "test boxes" to moderators, administrators and/or other participants in piracy-related websites and online discussion forums in exchange for favorable "write-ups or "reviews" which are posted on those websites and discuss the ability of NFusion Receivers and 8PSK Turbo Boards to be used to steal DISH Network Programming; (c) soliciting assistance of individuals involved in the online piracy communities to promote NFusion Receivers and 8PSK Turbo Boards and their ability to be used for piracy; and (d) allowing NFusion's trademarks and other intellectual property rights to be used in various advertisements that promote NFusion Receivers and 8PSK

Turbo Boards for their ability to pirate DISH Network Programming including through banner ads on piracy-related websites.

**Defendant Himself Circumvents DISH Network's Security System.**

42. Defendant and those acting on his behalf or in concert with him circumvent DISH Network's Security System in two ways. First, Defendant's agent operates on the NFusion IKS Server. The NFusion IKS Server's role is to circumvent DISH Network's Security System and transmit control words to connected NFusion Receivers in violation of the statutes enumerated herein. Second, Defendant's use, demonstration, testing and design of his devices and pirate software involve the actual circumvention of DISH Network's Security System and interception of DISH Network Programming.

43. Furthermore, because 8PSK Turbo Boards will not interface with an NFusion Receiver without the installation of NFusion pirate software, Defendant necessarily installs 8PSK Turbo Boards and pirate software and actually circumvents DISH Network's Security System and intercepts DISH Network Programming in the process.

## CLAIMS FOR RELIEF

## COUNT 1

**(Circumventing a Technological Measure That Effectively Controls Access to a Work in Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1))**

44.     DISH Network incorporates the preceding paragraphs as if set forth herein.

45.     DISH Network's Security System is a technological measure that effectively controls access to DISH Network Programming.

46.     Defendant was, and/or is responsible for, actively circumventing DISH Network's Security System to receive, without permission, authorization, or consent of DISH Network, DISH Network Programming in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1).

47.     Defendant violated Section 1201(a)(1) of the DMCA willfully and for purposes of commercial advantage and/or private financial gain.

48.     Defendant's misconduct has and will continue to cause damage to DISH Network in an amount to be proven at trial.  Unless permanently restrained and enjoined by the court, Defendant will continue to violate Section 1201(a)(1) of the DMCA.

## COUNT 2

**(Manufacture, Import, Offer to the Public, Provide, or Otherwise Traffic in Technologies, Products, Services, Devices, Components, or Parts Thereof in Violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1))**

49.     DISH Network incorporates the preceding paragraphs as if set forth herein.

50.     Defendant was and is actively engaged in the business of distributing unlawful technologies, products, services, components, or parts thereof in violation of the DMCA, 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1).

51.     Defendant's devices and pirate software are: (1) designed or produced for the purpose of circumventing DISH Network's Security System—a technological measure that effectively controls access to, copying and distribution of, copyrighted works; (2) made available by Defendant despite having no commercially significant purpose or use other than to circumvent DISH Network's Security System; and/or (3) marketed by Defendant and/or through others acting in concert with knowledge that they are used to circumvent DISH Network's Security System and for use in circumventing DISH Network's Security System.

52.     Defendant was and is distributing pirate devices, including NFusion Receivers and 8PSK Turbo Boards, and pirate software with knowledge that these technologies, products, services, components, or parts thereof are used to circumvent DISH Network's Security System — a technological measure that effectively controls access to, copying and distribution of, copyrighted works.

53.     Defendant's actions that constitute violations of the DMCA were performed without permission, authorization, or consent of DISH Network or any owner of copyrighted programming broadcast on the DISH Network platform.

54.     Defendant violated Sections 1201(a)(2) and 1201(b)(1) of the DMCA willfully and for purposes of commercial advantage or private financial gain.

55.     Defendant's misconduct has and will continue to cause damage to DISH Network in an amount to be proven at trial.  Unless permanently restrained and enjoined by the court, Defendant will continue to violate Sections 1201(a)(2) and 1201(b)(1) of the DMCA.

## COUNT 3

**(Facilitating the Unauthorized Decryption and Reception of Satellite Signals in Violation of the Communications Act, 47 U.S.C. § 605(a))**

56. DISH Network incorporates the preceding paragraphs as if set forth herein.

57. Defendant was intercepting and/or is assisting others to intercept and receive DISH Network Programming without authorization and for their own benefit in violation of the Communications Act, 47 U.S.C. § 605(a).

58. Defendant was and is assisting, directly or indirectly, with the design, manufacture, development, assembly, modification, solicitation, and/or distribution of pirate software with knowledge, or having reason to know, that such technologies and services are used primarily to assist in the unauthorized interception and decryption of direct-to-home satellite services in violation of the Communications Act, 47 U.S.C. § 605(a).

59. Defendant violated 47 U.S.C. § 605(a) of the Communications Act willfully and for the purpose of direct or indirect commercial advantage or private financial gain.

60. Defendant's misconduct has and will continue to cause damage to DISH Network in an amount to be proven at trial. Unless permanently restrained and enjoined by the court, Defendant will continue to violate the alleged provisions of the Communications Act.

## COUNT 4

**(Manufacture and Sale of Signal Theft Devices and Technology in Violation of the Communications Act, 47 U.S.C. § 605(e)(4))**

61. DISH Network incorporates the preceding paragraphs as if set forth herein.

62. Defendant was and is engaged in the business of designing, manufacturing, developing, assembling, modifying, importing, exporting, selling, or otherwise distributing pirate devices and software to facilitate the illegal use and reception of DISH Network Programming in violation of the Communications Act, 47 U.S.C. § 605(e)(4).

63. Defendant was and is assisting, directly or indirectly, with the design, manufacture, development, assembly, modification, solicitation, and/or distribution of pirate devices and software with knowledge, or having reason to know, that such devices and technology were and are used primarily to assist in the unauthorized interception and decryption of direct-to-home satellite services in violation of the Communications Act, 47 U.S.C. § 605(e)(4).

64. Defendant violated Section 605(e)(4) of the Communications Act willfully and for the purpose of direct or indirect commercial advantage or private financial gain.

65. Defendant's misconduct has and will continue to cause damage to DISH Network in an amount to be proven at trial. Unless permanently restrained and enjoined by the court, Defendant will continue to violate the alleged provisions of the Communications Act.

**COUNT 5**

**(Unauthorized Interception of Electronic Communications in Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a))**

66. DISH Network incorporates the preceding paragraphs as if set forth herein.

67. Defendant was and is intentionally intercepting DISH Network's encrypted satellite transmissions in violation of the Electronic Communications Privacy Act ("Wiretap Act"), 18 U.S.C. § 2511(1)(a), by facilitating the use of pirate software.

68. Defendant knew that the interception of DISH Network's encrypted satellite signals was and is illegal and prohibited.

69. Defendant violated section 2511(1)(a) of the Wiretap Act for a tortious or illegal purpose, or for purposes of direct or indirect commercial advantage or private financial gain.

70. Defendant's misconduct has and will continue to cause damage to DISH Network in an amount to be proven at trial. Unless permanently restrained and enjoined by the court, Defendant will continue to violate the alleged provisions of the Wiretap Act.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs seek judgment against Defendant as follows:

A. For a grant of permanent injunctive relief restraining and enjoining Defendant, and his employees, agents, representatives, attorneys, and all persons acting or claiming to act on his behalf or under his direction or authority, and all persons acting in concert or in participation with him, from:

1) offering to the public, providing, or otherwise trafficking in any device or software, or any other component, or technology, or part thereof (including NFusion-brand devices and satellite receivers and 8PSK Turbo Boards), through any means including Internet websites, that:

a) are primarily designed or produced for the purpose of circumventing DISH Network's Security System, including the encryption and access control protection contained in the software on DISH Network Access Cards, or any other technological measure adopted by DISH Network that effectively controls access to copyrighted programming on the DISH Network platform;

b) have only a limited commercially significant purpose or use other than to circumvent DISH Network's Security System, including the encryption and access control protection contained in the software on DISH

Network Access Cards, or any other technological measure adopted by DISH Network that effectively controls access to copyrighted programming on the DISH Network platform;

           c)    are knowingly marketed by Defendant and/or others acting in concert with Defendant for use in circumventing DISH Network's Security System, including the encryption and access control protection contained in the software on DISH Network Access Cards, or any other technological measure adopted by DISH Network that effectively controls access to copyrighted programming on the DISH Network platform; and

           2)    assembling, modifying, selling, and/or distributing any FTA Receivers or pirate software knowing or having reason to know that such device or software is primarily of assistance in the unauthorized decryption of direct-to-home satellite services through any means including Internet websites;

           3)    receiving DISH Network's electronic communications without DISH Network's authorization through any means; and

           4)    assisting others in receiving (including assistance offered by providing hypertext links or banner advertising) DISH Network's electronic communications without DISH Network's authorization through any means including the internet.

    B.    For an Order impounding all copies, electronic or otherwise, of pirate devices, software or other circumvention or signal theft technology, components, or devices in the custody or control of Defendant or related entities that the court has reasonable cause to believe were involved in a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*

    C.    For an Order directing Defendant to preserve and maintain all records, in any form (including electronic form), that evidence, refer, or relate to: NFusion devices, 8PSK Turbo Boards, software, communications or correspondence with suppliers of software, hardware, or other equipment or know-how concerning

satellite television piracy, including any dealer, distributor, or manufacturer of FTA Receivers.

D.     Award DISH Network the greater of its actual damages together with any profits made by Defendant that are attributable to the violations alleged herein, or statutory damages in the amount of up to $10,000 for each violation of 47 U.S.C. § 605(a), pursuant to 47 U.S.C. § 605(e)(3)(C)(i).

E.     Award DISH Network discretionary damages in the amount of up to $100,000 for each violation of 47 U.S.C. § 605(a), pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).

F.     Award DISH Network the greater of its actual damages together with any profits made by Defendant that are attributable to the violations alleged herein, or statutory damages in the amount of up to $100,000 for each violation of 47 U.S.C. § 605(e)(4), pursuant to 47 U.S.C. § 605(e)(3)(C)(i).

G.     Award DISH Network the greater of its actual damages together with any profits made by Defendant that are attributable to the violations alleged herein, or statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1), pursuant to 17 U.S.C. §§ 1203(c)(2) and 1203(c)(3)(A).

H.     Award DISH Network the greater of its actual damages together with any profits made by Defendant that are attributable to the violations alleged herein, or statutory damages in the amount of $100 per day for each violation of 18 U.S.C. § 2511(1) or $10,000, pursuant to 18 U.S.C. § 2520(c)(2).

I.     Award DISH Network punitive damages afforded by law pursuant to 18 U.S.C. § 2520(b)(2), and in equity for unjust enrichment.

J.     For an award of DISH Network's costs, reasonable attorneys' fees, and investigative fees.

K.     For pre- and post-judgment interest on all profits and damages granted by this Court in accordance with the law.

L.   For an accounting and restitution by Defendant of all gain, profit, and advantages derived from Defendant's unlawful and unfair business acts and practices.

M.   For such other and further relief as the Court deems just and proper.

DATED: June 21 2010                    Respectfully submitted,

By: _____
DAVID A. VAN RIPER, ESQ.
dave@vanriperlaw.com
Attorney for Plaintiffs

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury for all claims for which a jury is permitted.

DATED: June 21 2010                    Respectfully submitted,

By: _____
DAVID A. VAN RIPER, ESQ.
dave@vanriperlaw.com
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV10- 4561 SJO (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.



# COPY

Name & Address:
David A. Van Riper, Esq.
dave@vanriperlaw.com
VAN RIPER LAW
1254 Irvine Blvd., Suite 200
Tustin, CA 92780-3571

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK L.L.C., a Colorado Limited Liability Company, ECHOSTAR TECHNOLOGIES L.L.C., a Texas Limited Liability Company, and NAGRASTAR L.L.C., a Colorado Limited Liability Company, **PLAINTIFF(S)** <br> v. <br> WARREN EDWIN SCHEIBE, individually and d/b/a NFUSIONONLINE.COM and d/b/a NFUSION FTA, <br><br> **DEFENDANT(S).** | **CASE NUMBER** <br><br> CV10-4561 SJO(Ex) <br><br><br><br> **SUMMONS** |

TO:  DEFENDANT(S): WARREN EDWIN SCHEIBE, individually and d/b/a NFUSIONONLINE.COM and NFUSION FTA

        A lawsuit has been filed against you.

        Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,   David A. Van Riper, Esq.  , whose address is 1254 Irvine Blvd., Suite 200, Tustin, CA 92780-3571  .  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Dated:   JUN 22 2010

Clerk, U.S. District Court

By:  **DODJIE LAGMAN**
             Deputy Clerk

             *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                          SUMMONS



**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
DISH NETWORK, L.L.C., a Colorado Limited Liability Company,
ECHOSTAR TECHNOLOGIES L.L.C., a Texas Limited Liability Company, and
NAGRASTAR L.L.C., a Colorado Limited Liability Company.

**DEFENDANTS**
WARREN EDWIN SCHEIBE, individually and d/b/a NFUSIONONLINE.COM
d/b/a NFUSION FTA,

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

VAN RIPER LAW                    David A. Van Riper, Esq.
1254 Irvine Blvd., Suite 200    (714) 731-1800
Tustin, CA 92780-3571

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

---

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No      ☑ **MONEY DEMANDED IN COMPLAINT:** $ 100,000 per violation

---

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
17 U.S.C. Section 1201; 47 U.S.C. Section 605; 18 U.S.C. Section 2511 (Violations of Digital Millenium Copyright Act and Communications Act)

---

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☑ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☑ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

---

CV10-4561 SJO (Ex)

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                                   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                                   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                                   ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | All Plaintiffs in Arapahoe County, CO |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County, CA | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County, CA | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): *DRAV-R*     Date   6/21/10

     **Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |